# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| JEANETTE MILLER, | ) |
| | ) |
|     **Plaintiff,** | ) |
| | ) |
| v. | ) CIVIL ACTION 17-0344-WS-N |
| | ) |
| WAL-MART STORES EAST, LP, | ) |
| et al., | ) |
| | ) |
|     **Defendants.** | ) |

## ORDER

This matter is before the Court on the plaintiff's motion to remand. (Doc. 10). The parties have filed briefs and evidentiary materials in support of their respective positions, (Docs. 10, 12, 13, 15), and the motion is ripe for resolution. After careful consideration, the Court concludes the motion is due to be granted.

## BACKGROUND

The plaintiff filed suit against the original defendant ("Wal-Mart") and various fictitious defendants on August 11, 2015. The complaint alleged a single claim of negligence based on the plaintiff's April 2014 slip-and-fall at Wal-Mart's establishment. The complaint identified the plaintiff's damages as injuries to her elbow, knee and back, medical expenses, pain and suffering, mental anguish, permanent injury and impaired ability to earn a living. The *ad damnum* clause demanded damages "less than the sum or value of $73,000." (Doc. 1-1 at 2-4). In September 2015, the plaintiff responded to Wal-Mart's requests for admission. Therein, the plaintiff admitted that the most she was seeking to recover was $73,000, that there was no evidence (and would be no evidence) to support an award over $73,000, and that the proper measure of damages did not exceed

$73,000. (Doc. 1-4 at 4-5). Based on the *ad damnum* clause and the plaintiff's admissions, Wal-Mart did not seek to remove the action.[1]

The plaintiff also responded to Wal-Mart's interrogatories and requests for production in September 2015. The plaintiff produced 114 pages of medical bills and records. (Doc. 10-3 at 17-130). In response to interrogatories seeking information regarding the damages claimed and an itemization of medical expenses as to which she intended to request damages, the plaintiff referred Wal-Mart to the produced medical bills and records. (*Id*. at 7, 8). Those bills and records did not on their face reflect damages in excess of $75,000.

Medical treatment and bills that the plaintiff attributes to the April 2014 incident continued to mount after her initial discovery responses, including a second surgery in March 2016. In April 2016, the plaintiff served her first supplemental responses to Wal-Mart's interrogatories and requests for production. (Doc. 10-4). Attached were additional medical bills and records. (*Id*. at 22-42). The plaintiff also amended her answer to the interrogatory asking for "[a]n itemization of the damages claimed." She stated that she "will claim all damages to which she is entitled to under the laws of the State of Alabama. These damages will includ[e] but not be limited to the following medical bills." The plaintiff then listed four physicians, two hospitals and a physical therapy center, with a dollar amount by each. The plaintiff then stated the "[t]otal at present time" as the sum of these seven figures: $101,533.04. (*Id*. at 9). Wal-Mart did not remove the action and took no steps to clarify the inconsistency between this response and the plaintiff's earlier admissions and *ad damnum* clause.

---

[1] Wal-Mart asserts, but has not actually demonstrated, that it not a citizen of Alabama. Wal-Mart, a limited partnership, traces its lineage through several layers of unincorporated entities before concluding that the "parent company" of the last of these limited liability companies is a corporation. Wal-Mart has neither identified the members of this most remote limited liability company nor alleged the state or states of incorporation of the parent corporation. (Doc. 1 at 2-3). Because remand is required on other grounds, the Court need not consider the consequences of Wal-Mart's inadequate demonstration of its citizenship.

The complaint identified the fictitious defendants as the entities "which owned and/or were responsible for maintenance of the premises where Plaintiff fell." (Doc. 1-1 at 2). In June 2016, the plaintiff learned through discovery that National Flex, LLC ("Flex") answered this description. On August 23, 2016 (one year and twelve days after suit was filed), the plaintiff filed an amended complaint naming Flex as a second defendant. The amended complaint also added a cause of action for wantonness and replaced the previous demand for less than $73,000 with an indeterminate demand for an amount, above the state court jurisdictional threshold, to be determined by the jury. (Doc. 1-2 at 77-81). The parties agree that Flex, like the plaintiff, is a citizen of Alabama.

In July 2017, the plaintiff served amended responses to Wal-Mart's requests for admission, changing all her admissions to denials. (Doc. 10-5). Wal-Mart removed this action, with Flex's consent, approximately two weeks after being served with the plaintiff's amended responses.

## DISCUSSION

The plaintiff offers three grounds for remand: (1) the removal is untimely, because it was accomplished more than one year after suit was filed; (2) the amount in controversy does not exceed the jurisdictional threshold, because that determination is made as of the lawsuit's filing in August 2015; and (3) the parties are not completely diverse, because the plaintiff and Flex are both citizens of Alabama. As the Court finds the plaintiff's first argument dispositive, it does not address the others.[2]

In general, removal based on diversity must occur within one year after the action was commenced. 28 U.S.C. § 1446(c)(1). Wal-Mart relies on the statutory exception to this rule: removal after one year is untimely "unless the district court

---

[2] Although Wal-Mart and Flex both filed briefs in opposition to the plaintiff's motion to remand, the Court focuses on Wal-Mart's brief, as Flex's brief is a truncated version of Wal-Mart's brief except with respect to fraudulent joinder, an issue the Court does not reach.

3

finds that the plaintiff has acted in bad faith in order to prevent a defendant from removing the action." *Id*. Moreover, if "the district court finds that the plaintiff deliberately failed to disclose the actual amount in controversy in order to prevent removal, that finding shall be deemed bad faith under paragraph (1)." *Id*. § 1446(c)(3)(B). Wal-Mart does not dispute that it bears the burden of demonstrating the plaintiff's bad faith.[3]

As noted, this action was commenced in August 2015. As also noted, the plaintiff explicitly stated in discovery responses served in April 2016 that she "claim[s]" over $100,000 in damages. Wal-Mart insists the plaintiff thereby "failed to inform Wal-Mart of her intent to seek such damages above $73,000," (Doc. 12 at 15), but the suggestion is patently untenable; one cannot "claim" damages without intending to seek them.

Wal-Mart next asserts that, even though the plaintiff expressly claimed over $100,000 in damages, it was forbidden to seek removal because both the *ad damnum* clause and the plaintiff's admissions remained unamended, and the representations in those documents were "conclusive" as to the amount in controversy. (Doc. 1 at 6, 8, 9 & n.6; Doc. 12 at 15, 16, 18-19). Wal-Mart is mistaken.

For purposes of removal, "the sum demanded in good faith in the initial pleading shall be deemed to be the amount in controversy, except that … the notice of removal may assert the amount in controversy if the initial pleading seeks … a money judgment, but the State practice … permits recovery of damages in excess of the amount demanded …." 28 U.S.C. § 1446(c)(2)(A). Alabama is such a state. *Breland v. Ford*, 693 So. 2d 393, 397 (Ala. 1996) ("It is well settled

---

[3] *E.g., NPV Realty, LLC v. Nash*, 2017 WL 1735101 at *2 (M.D. Fla. 2017); *Kamal-Hashmat v. Loews Miami Beach Hotel Operating Co.*, 2017 WL 433209 at *3 (S.D. Fla. 2017); *see also Public Service Towers, Inc. v. Best Buy Stores, L.P.*, 28 F. Supp. 3d 1313, 1315 (M.D. Ga. 2014) (same burden under judicial doctrine of equitable estoppel).

4

that a litigant seeking general damages for personal injuries, such as compensation for physical pain and suffering, may recover an amount in excess of the amount contained in the *ad damnum* clause of the complaint."). This Court and others have so ruled. *Burns v. Windsor Insurance Co.*, 31 F.3d 1092, 1097 n.11 (11th Cir. 1994); *Harris v. Aghababael*, 81 F. Supp. 3d 1278, 1281 (M.D. Ala. 2015); *Abner v. United States Pipe & Foundry Company*, 2017 WL 553135 at *6 (N.D. Ala. 2017); *Coleman v. Unum Group Corp.*, 2015 WL 5284366 at *2 & n.2 (S.D. Ala. 2015). The *ad damnum* clause therefore could not have precluded removal in the face of discovery responses expressly claiming over $100,000 in damages.

"Any matter admitted under this rule is conclusively established unless the court on motion permits withdrawal or amendment of the admission." Ala. R. Civ. P. 36(b). Wal-Mart relies on this rule as precluding it from removing the action even after the plaintiff expressly claimed over $100,000 in damages. Rule 36(b), however, is not to be construed "as a device whereby facts, obviously disputed by the party propounding the request, may be conclusively established against that party." *Irons v. Le Sueur*, 487 So. 2d 1352, 1355 (Ala. 1986). The rule thus does not apply where, as here, the proponent disputes the accuracy of the admissions.

Even had it been bound by the plaintiff's admissions for purposes of the state court proceedings, Wal-Mart has made no showing – or even any argument – that a state rule could render the plaintiff's admissions conclusively binding on a federal court evaluating its subject matter jurisdiction. "[E]ven if binding on the parties, an admission or another form of agreement cannot bind a court in determining jurisdiction." *Eckert v. Sears, Roebuck and Co.*, 2013 WL 5673511 at *2 (M.D. Fla. 2013). The amount in controversy is to be determined by a preponderance of the evidence. 28 U.S.C. § 1446(c)(2)(B). A plaintiff's admission that the amount in controversy is below $75,000 is some evidence, but her later assertion that the amount in controversy is above $75,000 is also evidence (and – because it is more recent, more specific, and supported by citations to

5

particular providers – likely more probative).  The former does not conclusively trump the latter and does not preclude removal.

Even could the plaintiff's admissions prevent removal until and unless amended, Wal-Mart has not shown that the plaintiff failed to seek amendment "in bad faith in order to prevent" removal.  28 U.S.C. § 1446(c)(1).  The plaintiff may well have believed (as does the Court) that her interrogatory responses were sufficient to support removal and so concluded that no amendment was needed.  Or, she may have overlooked her earlier admissions and not considered whether they should be amended.  Certainly Wal-Mart has neither alleged nor shown that it confronted the plaintiff with the inconsistency and demanded retraction of the admissions.

Finally, Wal-Mart argues that, from August 2015 to April 2016, the plaintiff "deliberately failed to disclose the actual amount in controversy," which failure Section 1446(c)(3)(B) renders tantamount to bad faith. Wal-Mart, however, has not demonstrated a deliberate failure to disclose.  It relies almost exclusively on a subrogation letter, received by plaintiff's counsel two days before she served her amended discovery responses in April 2016, which reflects medical expenses of over $122,000 up to that point and over $113,000 up to the day suit was filed. (Doc. 1-5 at 1-4; Doc. 1 at 8, 11; Doc. 12 at 4, 15-16).

Wal-Mart assumes rather than demonstrates that this letter proves the amount in controversy was at all relevant times in excess of $75,000, but the Court cannot indulge that assumption.  Wal-Mart points to the total amount of health care provider charges, but it has failed to show that the plaintiff was ever on the hook for all those charges.  Because the plaintiff was insured, she presumably was not responsible for the gross amount of the charges but only for that portion of the lower, adjusted amount (as agreed to by the provider and the insurer) left unpaid

by the insurer, plus any amount she was obligated to reimburse her insurer from proceeds of this lawsuit.[4]

Even if the plaintiff was on the hook for the gross amount of medical charges, Wal-Mart has failed to show that she knew, prior to receiving the subrogation letter, either the magnitude of those charges or that she was responsible for paying them. Two days after receiving the letter, and a month after having a second surgery, the plaintiff served her amended discovery responses, in which she claimed over $100,000 in damages. This chronology suggests a change of tack based on new information, and a "straightforward change in strategy" is not bad faith. *Miami Beach Cosmetic and Plastic Surgery Center, Inc. v. UnitedHealthcare Insurance Co.*, 2016 WL 8607846 at *5 (S.D. Fla. 2016).

Wal-Mart argues that, because the plaintiff knew she had undergone surgery and other medical treatment before filing her complaint, she was legally obligated to investigate the resulting charges and her legal responsibility for them and cannot profit from her willful ignorance. (Doc. 12 at 17-18). The only removal case on which Wal-Mart relies offered no authority for this proposition other than a case addressing an insurer's duty to investigate a claim; the Court is unable to make the mental leap required to extrapolate from that context into the present one. At any rate, it appears the plaintiff did investigate, resulting in her amended discovery responses pegging her damages at over $100,000.

Even had the plaintiff deliberately failed to disclose that the amount in controversy exceeded $75,000, Wal-Mart's failure to remove within one year would remain unexcused. Suit was filed in August 2015, and the plaintiff served her supplemental discovery responses, expressly claiming over $100,000, in April

---

[4] For example, a July 23, 2015 entry reflects a gross charge of $197.40, with payment by the insurer listed as $76.00 and the plaintiff's liability listed as $19.00. (Doc. 1-5 at 4). Wal-Mart assumes this entry places the entire $197.40 in controversy, but at most it places $95.00 in controversy: the $76.00 paid by the insurer plus the $19.00 owed by the plaintiff.

7

2016. Because this disclosure was made eight months after suit was filed, any previous failure to disclose did not "prevent [Wal-Mart] from removing the action" within the one-year window of Section 1446(c)(1).[5]

## CONCLUSION

For the reasons set forth above, the Court is unable to find that the plaintiff acted in bad faith in order to defeat removal. Because the defendants' removal is therefore untimely, the plaintiff's motion to remand is **granted**. This action is **remanded** to the Circuit Court of Clarke County.

DONE and ORDERED this 16th day of November, 2017.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE

---

[5] Because this case does not involve such a situation, the Court does not consider the potential consequences were a plaintiff to deliberately fail to disclose the actual amount in controversy for a period less than a year and to add a non-diverse defendant during that period, thereby preventing removal.

8